UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JERON R. LOTT,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO. C13-1531-TSZ-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Jeron R. Lott appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed.

I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 35-year-old man with a high school diploma. Administrative Record ("AR") at 45, 216. His past work experience includes employment in various manufacturing businesses, and as a porter and sanitation engineer. AR at 216. Plaintiff was last gainfully employed in 2004. *Id*.

REPORT AND RECOMMENDATION - 1

1   On June 17, 2010, Plaintiff filed applications for SSI and DIB, alleging an onset date of
2   August 31, 2005. AR at 190-91, 194-99. Plaintiff asserts that he is disabled due to
3   schizophrenia, bipolar disorder, and depression. AR at 215.

4   The Commissioner denied Plaintiff's claims initially and on reconsideration. AR at
5   120-23, 129-40. Plaintiff requested a hearing, which took place on November 18, 2011. AR at
6   39-115. On December 30, 2011, the ALJ issued a decision finding Plaintiff not disabled and
7   denied benefits based on her finding that Plaintiff could perform a specific job existing in
8   significant numbers in the national economy. AR at 11-33. Plaintiff's administrative appeal of
9   the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the
10  "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On
11  August 26, 2013, Plaintiff timely filed the present action challenging the Commissioner's
12  decision. Dkt. 1, 3.

## II.   JURISDICTION

14  Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§
15  405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

17  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of
18  social security benefits when the ALJ's findings are based on legal error or not supported by
19  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th
20  Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is
21  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
22  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750
23  (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in
24  medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Lott bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

REPORT AND RECOMMENDATION - 3

99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On December 30, 2011, the ALJ found:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 3010.

2. The claimant has not engaged in substantial gainful activity since August 31, 2005, the alleged onset date.

3. The claimant's major depressive disorder, adjustment disorder, post-traumatic stress disorder, anxiety, and personality disorder are severe.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), meaning he is able to lift and/or carry no more than 50 pounds at a time, with frequent lifting or carrying of objects weighing up to 25 pounds; to sit for 6 hours in an 8-hour workday; and to stand and/or walk for 6 hours in an 8-hour workday, with no limitation on pushing or pulling the above amounts. The claimant must avoid concentrated exposure to hazards, such as machinery and heights.  He is able to perform low stress work, defined as unskilled work with simple tasks, occasional changes in the work setting, occasional judgment or decision-making, no interaction with the general public, and occasional, superficial interaction with co-workers, in a job that is essentially isolated, with occasional supervision.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1976, and was 29 years old, which is defined as a younger individual age 18-49, on the alleged

REPORT AND RECOMMENDATION - 5

disability onset date.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, since August 31, 2005, through the date of this decision.

AR at 13-32.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ properly evaluated the medical opinion evidence.

2. Whether the ALJ properly rejected the lay evidence.

Dkt. 19 at 1.

## VII.   DISCUSSION

A. <u>The ALJ Did Not Err in Evaluating the Medical Opinions Provided by Jim Berghuis, Ph.D.; Jinny Kim, M.D.; Victoria McDuffee, Ph.D.; and Wayne Dees, Ph.D.</u>

Plaintiff assigns error to the ALJ's assessment of an October 2010 medical source statement jointly completed by his treating providers, Drs. Kim and Berghuis. AR at 493-95. Plaintiff also argues that the ALJ erred in rejecting some of the limitations identified by examining psychologists Drs. McDuffee and Dees. The Court will address the opinions in turn.

//

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1.  *Legal Standards on Evaluating Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating

or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

2.      *Opinion of Drs. Kim and Berghuis*

Drs. Kim and Berghuis explained that they believed Plaintiff could physically perform light or medium work, but that they did not find him capable of performing "work on a regular and sustained basis[,]" due to his concentration impairments, his inability to learn, follow, or complete job tasks (due to depression and hallucinations), his difficulties interacting appropriately with co-workers, supervisors, and the public (due to depression, anxiety, and irritability), and his difficulties sitting still for any length of time (due to agitation). AR at 493. Drs. Kim and Berghuis also specifically indicated that they found Plaintiff's complaints to be credible and that they did not believe he was malingering. *Id*. Lastly, Drs. Kim and Berghuis indicated that they believed Plaintiff's impairments would "likely result in high absenteeism (3+ days per month)." *Id*.

The ALJ assessed the opinion of Drs. Kim and Berghuis as follows:

> I have considered this opinion by the claimant's providers but give it little weight because I disagree that the claimant's complaints are credible, as discussed above. He has been inconsistent in his reports to various examining and treating providers about his substance abuse history, his legal history, and even his symptoms. The doctors cited the claimant's reports of hallucinations as a significant basis for their conclusions, but as discussed above, the claimant admitted, when seeking discharge from Fairfax, that he had been insincere in his

REPORT AND RECOMMENDATION - 8

> reports about that alleged symptom. Dr. Dees noted the claimant's inconsistencies in his reports on psychological evaluations, and Dr. McDuffee felt it "probable" that a diagnosis of malingering applied. Furthermore, the claimant has failed to follow through on medical appointments and medications, at times stopping his medications for no reason. For these reasons I conclude the claimant's reported symptoms and functional restrictions are not reliable and give the opinion of his providers little weight, as based on the claimant's less than credible subjective reports.

AR at 29. Plaintiff argues that this reasoning is not legitimate because a person does not have to be credible in order to be disabled, and also because Drs. Kim and Berghuis specifically did not question his credibility. Dkt. 19 at 5-6.

Addressing Plaintiff's more abstract argument first: it is true that a claimant can be found to lack credibility and also be found disabled. But that point is not particularly relevant here, because the ALJ did not claim otherwise. Instead, the ALJ reasoned that because the opinion of Drs. Kim and Berghuis was rendered in reliance on Plaintiff's non-credible self-report, it is less credible as a result. AR at 29. Plaintiff disputes this reasoning, citing *Ryan v. Commissioner of Social Security Administration*, 528 F.3d 1194, 1199-2000 (9th Cir. 2008), for the proposition that when a doctor does not question a claimant's credibility, and supports his or her opinion with her own observations, an ALJ cannot discount that doctor's opinion based on a claimant's lack of credibility. Dkt. 19 at 5-6. The facts of this case distinguish it from *Ryan*, however. In this case, Drs. Kim and Berghuis did not cite any of their own observations as support for their opinions; instead, they pointed only to Plaintiff's reported symptoms, including some symptoms that the ALJ specifically found to lack credibility in other parts of the decision (*i.e.*, hallucinations (AR at 22, 330)). Their treatment notes reveal that they frequently assessed the severity of Plaintiff's mental symptoms via a self-report questionnaire (*e.g.*, AR at 411, 417, 420, 427, 437, 525, 532, 535), but there is no evidence that they objectively tested his concentration abilities, for example, before opining that Plaintiff

REPORT AND RECOMMENDATION - 9

was incapable of learning, following, or completing job tasks due to poor concentration caused by depression and hallucinations.

Furthermore, Drs. Kim and Berghuis were apparently unaware that Plaintiff had admitted on a previous occasion that his complaints of hallucinations were insincere, which undermines the providers' opinion that Plaintiff's complaints were credible. *See Calkins v. Astrue*, 284 Fed. Appx. 613, 615-16 (9th Cir. Jun. 17, 2010). Dr. Berghuis himself noted that Plaintiff completed a questionnaire endorsing symptoms that would indicate bipolar disorder, but that when he questioned Plaintiff about those answers he found it "ver[y] questionable" whether Plaintiff indeed met the diagnostic criteria for bipolar disorder. AR at 450. Lastly, the ALJ noted that Plaintiff did not always follow through with appointments and medication regimen, a fact that Dr. Berghuis's and Dr. Kim's treatment notes corroborate (AR at 442, 467-68, 535), and which further undermines the credibility of Plaintiff's subjective complaints because they did not always reflect full compliance.[3]

Because Drs. Kim and Berghuis did not support their opinion with their own clinical findings, and instead appeared to rely on Plaintiff's non-credible self-report, *Ryan* does not apply here. This situation is akin to *Bray v. Commissioner of Social Security Administration*, where the Ninth Circuit Court of Appeals noted that where a physician's opinion that is based on self-report that the ALJ properly finds to lack credibility, the ALJ can reasonably discount that opinion. 554 F.3d 1219, 1227-28 (9th Cir. 2009). Plaintiff does not challenge the ALJ's

---

[3] Plaintiff devotes some portion of his briefing (Dkt. 19 at 6-10, Dkt. 21 at 6-8) to discussing whether the ALJ properly considered his lack of treatment/compliance, which was one of the factors the ALJ relied upon in discounting Plaintiff's credibility. AR at 27. Plaintiff has not challenged the ALJ's adverse credibility determination, however. In light of that unchallenged adverse credibility determination, it was reasonable for the ALJ to cite evidence — including a failure to follow through with treatment recommendations and medication regimens — that undermines Drs. Kim and Berguis's opinion that Plaintiff's complaints were credible. As those providers themselves noted, Plaintiff's unreliability in follow through and medication compliance affected the presentation of his symptoms.

REPORT AND RECOMMENDATION - 10

adverse credibility determination, thereby bolstering the ALJ's reasoning in this case. Therefore, the ALJ provided legitimate reasons to discount Drs. Kim and Berghuis's joint opinion.

3.   *Dr. Dees' Opinions*

Plaintiff challenges the ALJ's rejection of some of Dr. Dees's September 2010 opinion, specifically his opinions that Plaintiff's impairments caused marked and severe limitations in various areas of cognitive and social functioning. AR at 29 (referring to AR at 549-60). Dr. Dees opined that Plaintiff had a severe limitation in his ability to exercise judgment and make decisions, and cited as support for that opinion Plaintiff's self-reported suicidal and homicidal thoughts, his feeling unsafe, his history of participating in gang violence and poor decisionmaking and self-sabotaging behaviors, and his impulsivity. AR at 554. The ALJ agreed that the record "does not reflect unimpaired judgment and decision making, but I do not agree that the claimant's subjective and unverified reports support a severe limitation in this domain." AR at 29. The ALJ also found that Dr. Dees's opinions regarding Plaintiff's marked limitations in the ability to perform routine tasks, respond appropriately to and tolerate the pressures of a normal work setting, and maintain appropriate behavior in a work setting were likewise based on Plaintiff's self-report, and therefore lacked credibility. *Id.*[4]

---

[4] The ALJ also indicated that the DSHS form completed by Dr. Dees asks for legal conclusions rather than medical opinions, to the extent that it asked Dr. Dees to contemplate a "normal work setting." AR at 28-29. The Court agrees with Plaintiff that medical evidence is probative as to a claimant's ability to handle workplace stress and to maintain appropriate workplace behavior; the phrasing of the DSHS forms is more typically construed as a context for the limitation, rather than calling for a vocational or legal opinion regarding the definition of a "normal" workplace. *See, e.g.*, *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-24 (9th Cir. 2010) (discussing the value of medical opinions regarding workplace functionality). Even assuming the ALJ erred in construing Dr. Dees's opinions as legal conclusions, this error is harmless because of the other legitimate reasons she provided to discount his report.

REPORT AND RECOMMENDATION - 11

1    As the Court noted in the previous subsection, Plaintiff does not challenge the ALJ's
2 adverse credibility determination. He furthermore does not persuasively dispute that the
3 "observations" recorded by Dr. Dees as supporting his opinions merely reiterate Plaintiff's
4 subjective self-report. AR at 554. Accordingly, the ALJ did not err in discounting Dr. Dees's
5 opinion to the extent it was rendered in reliance on Plaintiff's non-credible self-report. *See*
6 *Bray*, 554 F.3d at 1227-28.

7    4.    *Dr. McDuffee's Opinions*

8    Plaintiff objects to the ALJ's rejection of portions of Dr. McDuffee's July 2011 opinion
9 (AR 501-10). The ALJ noted that although Dr. McDuffee assessed various marked and severe
10 limitations in cognitive and social functioning, she did not provide explanations for all of those
11 opinions, and the ones she did explain relied on non-credible self-reporting. AR at 30 (citing
12 AR at 504). The ALJ also indicated that Dr. McDuffee's statement that Plaintiff has "minimal
13 [history] of employment" (AR at 504) is "simply inaccurate" (AR at 30).

14    For the reasons explained in the previous subsections, the ALJ did not err in
15 discounting Dr. McDuffee's opinions to the degree she rendered them in reliance on Plaintiff's
16 non-credible self-reporting, particularly given that Plaintiff does not challenge the ALJ's
17 adverse credibility determination. Furthermore, the ALJ reasonably cited Plaintiff's earnings
18 report as evidence that Plaintiff's work history was arguably more than minimal. *See* AR at
19 200-04. The ALJ's interpretation of the Plaintiff's job history further elucidates why she
20 believed the record revealed more than "minimal" work experience. AR at 26-27 (describing
21 Plaintiff's work history and the reasons why various jobs ended). Thus, the ALJ provided
22 specific and legitimate reasons to discount Dr. McDuffee's opinion.

23 //

24 //

B. <u>The ALJ Did Not Err in Assigning Little Weight to the Statement Written by Plaintiff's Cousin.</u>

Plaintiff's cousin, Troy Perry, wrote a statement on his behalf. AR at 260-61. The ALJ considered Mr. Perry's statement, but found that it was entitled to "little weight" because some of Mr. Perry's statements reiterated non-credible statements made by Plaintiff. AR at 30. The ALJ noted, for example, that Mr. Perry reported that Plaintiff had told him that he heard "voices that are not there" (AR at 260), but that Plaintiff also admitted that his reports of auditory hallucinations were not reliable (AR at 330). Plaintiff argues that the ALJ did not provide a germane reason to discount Mr. Perry's statement. *See Smolen*, 80 F.3d at 1288-89 (holding that an ALJ can reject lay evidence only upon giving germane reasons).

The Court disagrees. The ALJ correctly noted that Mr. Perry primarily recorded what he heard Plaintiff say about his symptoms, and the ALJ found that Plaintiff's testimony lacked credibility (AR at 16-27): a finding not challenged by Plaintiff. For example, Mr. Perry described Plaintiff's reports of suicidal ideation, paranoia in public spaces, and auditory hallucinations, and the ALJ explained why she found those reports to lack credibility. AR at 26, 260. Because Mr. Perry's statement contains a reiteration of complaints properly found to lack credibility, the ALJ did not err in discounting Mr. Perry's statement. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14)** days of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may

REPORT AND RECOMMENDATION - 13

affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on April 18, 2014.

DATED this 3rd day of April, 2014.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14